Diamantino **DOS SANTOS**, Plaintiff,

v.

**Joseph F. O'NEILL et al., Defendants.**

Diamantino **DOS SANTOS et al.,**
**Plaintiffs,**

v.

**Joseph F. O'NEILL and Robert Flint, Defendants.**

Helen **GAGLIARDI, Plaintiff,**

v.

**Robert FLINT et al., Defendants.**

**Civ. A. Nos. 73–1089, 73–1090 and 73–1233.**

United States District Court,
E. D. Pennsylvania.

March 11, 1974.

Benjamin Kuby, Philadelphia, Pa., for plaintiffs.

Stephen T. Saltz, City Sol., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

These three consolidated actions involve two alleged civil rights infractions by the same Philadelphia police officer, Officer Flint, and alleged negligence on part of Philadelphia's police authorities for maintaining defendant Flint as a police officer. The two Dos Santos actions, one for compensatory and punitive damages, the other for equitable relief, involve the alleged unprovoked beating of plaintiff Dos Santos by defendant Flint and other unnamed police officers on May 16, 1972. The Gagliardi action involves the alleged fatal shooting of Joseph Gagliardi by defendant Flint on June 2, 1972. Plaintiffs, represented by common counsel, have moved to compel the production of certain documents and reports prepared or amassed by the Philadelphia Police Department. The Police Department opposes the production of these documents on the grounds of executive privilege.

The doctrine of executive privilege as applied to police records has customarily been justified on the grounds that their disclosure would chill the willingness of witnesses to give information during police investigations and that their disclosure would "impede candid and conscientious self-evaluation of actions of the department." Frankenhauser v. Rizzo, 59 F.R.D. 339, 342 (E.D.Pa.1973). See also Wood v. Breier, 54 F.R.D. 7 (E.D.Wisc.1972). However, the courts which have been faced with the defense of executive privilege have recognized that it is not an absolute privilege, but one that should be upheld only if the damage to the executive department or the public interest from disclosure outweighs the harm to the plaintiffs from nondisclosure. Frankenhauser v. Rizzo, cited *supra*; Wood v. Breier, cited *supra*; Bradley v. City of Philadelphia, Civ. No. 69–1096 (E.D.Pa.). This balancing task, in turn,

requires the consideration of a number of factors which are discussed in some detail below.

Perhaps the fullest categorization of these factors was made by Judge Becker in Frankenhauser v. Rizzo, cited *supra*. Judge Becker stated:

"In the context of discovery of police investigation files in a civil rights case, however, at least the following considerations should be examined: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

In the case before us, plaintiffs have asked for a wide range of documents relating not only to the incidents that gave rise to their causes of action, but also to other incidents of an allegedly similar nature involving defendant Flint. Plaintiffs have asked for:

i. all documents, memoranda, or reports used in or resulting from the police department investigation into the shooting of Joseph Gagliardi and the arrest of Diamantino Dos Santos;

ii. The police report(s) concerning the arrest of plaintiff Dos Santos;

iii. all documents generated by a police investigation into the arrest of Benjamin Edwards, who is not a party to the present action;

iv. all documents or reports prepared by police department employees concerning 14 arrests and one shooting of persons not parties to the present action by defendant Flint, and the criminal records of certain of these individuals;

v. all records of police investigation into any other citizen complaints of excessive use of force by defendant Flint or defendant Wilson;

vi. all records of telephone calls made to the Philadelphia Police Department between 5:45 and 6:30 p. m. on May 16, 1972 (the time of Diamantino's arrest);

vii. all records of police radio messages transmitted to policemen patrolling in automobiles between the hours of 6 and 7 p. m. on May 16, 1972;

viii. all Police directives or manuals regarding the use of deadly force by police officers and the use of handcuffs by police officers.

ix. defendants Flint and Wilson's personnel files.

It should be noted at the outset that defendants have shortened this list somewhat by agreeing to produce the records referred to in items vi and vii above, should they still be in existence.

The Court finds that plaintiffs are entitled to the factual portions of the regular police reports and the police investigative reports concerning the shooting of Joseph Gagliardi and the arrest of Diamantino Dos Santos, as well as any signed statements of witnesses which were obtained during the course of the investigations. The Court feels that plaintiffs have met the test outlined by Judge Becker in Frankenhauser v. Rizzo, cited *supra*. Even if plaintiffs or their counsel did conduct their own investigations near the time of the inci-

dents, the factual information contained in the reports is still of extreme importance to them in presenting their case. Second, disclosure now would not interfere with any criminal prosecution, since it is unrealistic to expect that either defendant Flint or plaintiffs will be prosecuted.

We find defendants' arguments in this matter to be unconvincing. Defendants state that "if these [police] reports were repeatedly turned over to plaintiffs in civil actions, so that they can be used against the very authority that has initiated them, this will certainly have the effect of putting a low priority on these investigations or removing them from police procedure." However, in adopting this position, defendants ignore the fact that each review of a claim of executive privilege is made on a case-by-case basis after considering the factors involved in each case. As to defendants' argument that plaintiffs could have conducted their own investigation, some of the witnesses to these incidents were policemen whom plaintiffs have been unable to identify. But even if some of the information sought were not in the exclusive control of the Police Department, it would be sufficient to justify disclosure of the factual sections of the report and witnesses' statements that the information be of material importance to plaintiffs' actions and that they might be prejudiced if it were denied them.

■ The Court believes that the police or investigative reports concerning defendant Flint's treatment of persons not parties to this action, i. e. those items listed in sections iii, iv, and v above, are relevant to plaintiffs' claims against Flint's superiors in the Police Department. Information contained in these reports could bear on the issue of whether certain of the defendants had knowledge that defendant Flint had engaged in conduct similar to that alleged in the complaint previous to the inci-

dents alleged in the complaint, and thus that they were negligent in allowing defendant Flint to continue preforming duties which permitted such conduct to re-occur.

After a consideration of the factors discussed in *Frankenhauser*, cited *supra*, this Court is of the opinion that all documents prepared by Police Department employees or generated by police investigations, concerning the 15 named non-parties, or any other party who complained of the use of excessive force by defendant Flint or defendant Wilson arising out of civilian complaints directed wholly or in part at defendant Flint or defendant Wilson, should be produced. Likewise, the same conclusion supports the production of the criminal records of the four named non-parties, as well as the personnel files of defendants Flint and Wilson.

■ The release of any interdepartmental document of a primarily evaluative, rather than factual, nature could conceivably cause more harm to the defendants' procedures for self-criticism than benefit to plaintiffs' case. Should the Department feel that the documents heretofore discussed contain evaluative material, the disclosure of which would harm the public interest, they may request an in camera inspection of such material by this Court. Should the Court then feel that disclosure would be harmful, it will excise it before the disclosure of the documents to plaintiffs.

■ We see no reason why all regulations, directives, manuals, pamphlets, training materials, or other documents produced by or for the Police Department and used by it to communicate departmental policies or rules of law to police officers regarding the use of deadly force or the use of handcuffs should not be produced. These regulations are adopted for the safety of civilians as well as police officers, and there appears to be no good reason for the application of executive privilege.

## ORDER

AND NOW, to wit, this 11th day of March, 1974, the motion of plaintiffs in the above captioned matters to compel the production of documents by defendants is hereby GRANTED *concerning* the following items, subject to an in camera inspection by this Court should defendants request it:

1. Any and all documents, reports, memoranda, notes, or other papers, prepared by officers or employees of the Philadelphia Police Department concerning;

(a) the fatal shooting of Joseph Craig Gagliardi on June 2, 1972, including any documents prepared in the course of or as a result of any police investigations into the aforesaid shooting;

(b) the arrest of plaintiff Diamantino dos Santos on May 16, 1972, including, but not limited to, the investigation conducted in response to plaintiff dos Santos' complaint to Commissioner O'Neill on March 13, 1973;

(c) the arrest of Benjamin Edwards on April 20, 1970, including, but not limited to, the investigation conducted in response to Mr. Edwards' complaint to former Commissioner Frank Rizzo on August 4, 1970;

(d) the arrest of Ellis Steward on October 1, 1970;

(e) the arrest of Edward Piercesaw by defendant Flint in the fall of 1971;

(f) the shooting of Clarence Toney by defendant Flint on or about May 19, 1970;

(g) the arrest of Neil McGeeham by defendant Flint on December 6, 1969;

(h) the arrest of William Wilson by defendant Flint on August 18, 1968;

(i) the arrest of Harvey Yancey by defendant Flint in the spring of 1971;

(j) the arrest of Ernest Singletary by defendant Flint in the fall of 1970;

(k) the arrest of Ray Hughes by defendant Flint on September 27, 1968;

(*l*) the arrest of Neal Felton by defendant Flint on July 2, 1968;

(m) the arrest of Louis McLeod by defendant Flint in the fall of 1970;

(n) the arrest of Ronald Reed by defendant Flint in the spring of 1971;

(o) the arrest of Philip Berman by defendant Flint on September 7, 1968;

(p) the arrests of John Durkin and John Zevetski by defendant Flint on February 4, 1968.

2. Extracts of the criminal records of the following persons named in the previous paragraphs: William Wilson, Louis McLeod, Ray Hughes, and Neal Felton.

3. Any and all documents, reports, memoranda, notes, or other papers, prepared by officers or employees of the Philadelphia Police Department in the course of or as a result of any investigations (a) conducted of any other incidents involving the use of deadly force by defendant Flint; or (b) arising out of civilian complaints directed wholly or in part at defendant Flint or defendant Wilson.

4. Any and all regulations, directives, manuals, pamphlets, training materials, or other documents, produced by or for the Philadelphia Police Department and used by it to communicate departmental policies or rules of law to Philadelphia police officers, regarding (a) the use of deadly force by police officers, and (b) the use of handcuffs by police officers.

5. Any and all documents, memoranda and correspondence, in the possession of any official or employee of the Philadelphia Police Department, expressing or pertaining to civilian complaints concerning defendants Flint or Wilson in their capacities as Philadelphia police officers, including but not limited to letters of complaint, reports of investigations, evaluative memoranda prepared by

police officials, notes of testimony at Police Board of Inquiry hearings, and records of disciplinary actions taken against defendants Flint and Wilson by the Department.

And it is so ordered.